May it please the court, my name is Kathleen Lord and I represent the Taurus Rainer. Nearly two decades ago Mr. Rainer was sentenced to die in prison for crimes he committed as a juvenile. The trial court sentenced him to 244 years aggregate sentence and intended that Mr. Rainer die in prison. Now the law has changed substantially or evolved since that time and we're here before the court today to decide whether Mr. Rainer's 112 year sentence does indeed violate the principles of Graham and the Eighth Amendment. Before I get to the merits I'd like to talk for a moment about the remedy that we're seeking and what we're asking this court to do is grant conditional writ and remand to the state court for resentencing. I think that would provide the most equitable form of relief because it would allow the state court in the you can't just sentence a juvenile as if he were a small adult and no court, no state court has applied those principles to Mr. Rainer at all. In applying those principles today in 2019 I think many of the issues that we're grappling with in terms of what is a meaningful opportunity for release, when should it happen, those sort of issues may just disappear in state court and that's because in recent times the state courts have been resentencing our juveniles who were sentenced to mandatory life without parole for first-degree murder and the sentences in those cases have been in the ranges of between 30 and 50 years or a 40 year life sentence that provides parole eligibility. And when you say the state courts have been doing this have you provided us with cases listing these cases that have had this result? I would be happy to and I think that I would be able to confer with opposing counsel and he would agree with the correctness. I've actually been spearheading some of that sentencing so I have all those cases. Mr. 28J letter just giving us a list of those cases would be helpful. Thank you. I'll do that. So that that's what we're asking for in relief. Now I think everyone agrees that de novo review applies here and the Colorado Supreme Court has their decision is contrary to clearly established federal law in Graham as interpreted also by this court in Booter. Counsel in connection with de novo review with regard to whether or not the opportunities for early release in the state provide a meaningful opportunity for early release based on a demonstration of maturity and responsibility. Is that a factual issue, a legal issue, or a mixed question of law and fact? I think in some ways it's a mixed question. I have argued and I think this argument would make it a question of law that under Colorado law parole is not what was contemplated by Justice Kennedy in in his cases. It's not something that in the regular course of events an individual who can show themselves to be rehabilitated will actually be released. Well parole is never guaranteed is it? It's never guaranteed. You just have to have a reasonable opportunity to seek it. Well that's where I think we have a real debate here because parole can be different things and I think in a way it's analogous to what this court did in Booter when you were analyzing well what is a sentence? If a sentence is a term of years, say 300 years, is that equivalent to a life sentence? Are we going to distinguish life sentences and life without parole sentences? Are we going to really understand what we're talking about? And what what Booter and Graham requires is a meaningful opportunity for release based on demonstrated rehabilitation. And a chance of parole is not the same thing as a meaningful opportunity for release. Well that's all you ever have is a chance for parole. You go before a parole board and as long as you have an opportunity they don't have to give you parole. They can evaluate the facts and turn you down. Is that a problem? That is a problem in the context of sentencing juveniles. Why? Because a chance of parole doesn't rise to the level of a life sentence. And we get that rule from Graham, is that right? We get a meaningful opportunity for release for a juvenile? We get it from Graham and we get it from the subsequent case law. I think Montgomery is instructive also because Montgomery talks about you know there are going to be juveniles who when they come up for parole they're going to be denied because they aren't rehabilitated. They're the rare juvenile who's incorrigible and we can't release them. But for the vast majority of juveniles what the court said in Montgomery in holding that Miller was retroactive was that you have to restore their hope for some years outside prison walls. So a chance for parole, Judge Kelly, when you are appearing before a parole board who has absolute discretion to say nay or yay. It seems to me you're asking for a guarantee of parole. No, I'm not asking for a guarantee. Well what's the difference between a guarantee and a realistic opportunity? A guarantee for parole and this is why I worried so much about semantics and language and I actually before coming to the oral argument I was looking up in Webster's well what is hope? What is an opportunity? What is a chance? What is realistic and meaningful? Because what Justice Kennedy has always said and Justice Kagan in Miller is that it's not just an opportunity for release, not an opportunity for parole, it's a realistic and meaningful opportunity. And what does that mean? Realistic, meaningful, having a meaning or purpose, full of meaning, significant. Opportunity, well it's a good chance for advancement or progress. Hope, hope for release. Hope, it's a desire with expectation of attainment to expect with confidence. Can I ask you, let's accept those definitions and I want to sort of interface this question with my earlier question about the standard. You said it's a I think it's a mixed question of law and fact, right? And so sometimes, is that right? It's, you know, it's hard to say. This court recognizes that parole under Colorado law doesn't impact the severity of the sentence and I cited this court to a couple of cases in Colorado that talk about a lack of any expectation for release. Okay, so in any event whether or not it is dependent on the answer to some factual questions, there's two sub-issues. One that you had a dialogue with Judge Kelly about and that is the general parole. There's also obviously a lot of discussion about the J-CAP program. My question is focused on the J-CAP program and more particularly whether the answer to your, the question presented in this case is factual. Two of the elements for entry into the J-CAP program that you've taken issue with are the nature and circumstances of the offense, arguing obviously that attempt for first degree murder is a very serious offense that could effectively preclude Mr. Rayner from being admitted into the J-CAP program. And the second is the impact of the offense on the victim, obviously the attempted murder. But we have no information, do we, in our record on whether or not these two factors, A and E, that you take issue with have as a practical matter precluded anyone or a substantial number of individuals from being admitted into the J-CAP program. And so if we were to answer the question, does the availability of J-CAP for an offender convicted of attempt for first degree murder, to answer whether or not it provides a meaningful opportunity for early release given your definitions, we have to answer these intensely factual questions of whether or not these two elements have, as a practical matter, been jeopardized individual's entry for the J-CAP program. Well, as the Court's probably aware, it's a very new program. And, you know, there isn't a whole lot of data. It's, and so. So shouldn't we wait and see? Well, that's why I'm urging a remand for resentencing, honestly. I can tell you from my own experience, and I've represented several people who were convicted of first degree murder and got. Well, we can only look at our record. Okay. Well, in your record, and this is where it becomes a question of law, there was a real concern in Roper v. Simmons. The reason the Court initially adopted a categorical bar to death, the death penalty for individuals younger than 18, or yes, was because they were concerned that the nature of the offense and the impact on the victim would overwhelm all other factors. But we have no idea. You know, one of the elements for entry into the program is someone has to have actually spent hard time in prison for 20 years. You know, the possession of marijuana will never qualify for a 20-year hard time served sentence. And if we cannot tell whether or not these two factors would be a practical barrier, it may be that Mr. Rainer might have a viable claim 20 years from now or 10 years from now once there's been empirical data. But right now, wouldn't we be compelled to reject your claim based on the absence of evidence? Maybe it's not your fault since it's a new program. Well, this is, you are looking at the entry point into the J-CAP program. I would ask the Court to focus for a minute, as a matter of law, on the exit point from the J-CAP program. On the what? I'm sorry. Oh, I'm sorry. I'm not speaking loud enough. I was asking the Court to focus not on the admission to the J-CAP program, which is not guaranteed, even if you're rehabilitated, but on the exit point. And what I tried to convey in the brief is that when the legislature passed the program, they sold it. They sold it to the legislature by saying this doesn't give anyone anything more than they already had before we're passing this. The government, the governor, maintains complete discretion. Well, that's good political marketing, but isn't there a presumption that's included in the J-CAP that makes it a little more unique and obviously not a guarantee, but a better chance for release? Not in the context of what we're looking at, where victim impact and where... But once you get in and process through several of the steps, I know that's wishes and hopes, there is a presumption. And the presumption is what it is. It's told to the governor and the governor, just like he always had, has complete discretion to grant or deny. And that is what's not enough. We have... So you do want a guarantee then? You know, if you want to say a guarantee, it's not a guarantee for all offenders. No, I'm talking about a juvenile offender. You want a guarantee that the governor will not exercise his discretion and say, this is too bad a character. I'm not going to grant him parole, even though it's recommended. And I will never have that guarantee. I will never have that guarantee. And, you know, when the case law says there's no guarantee that an offender will be released, you have to put that in context. And the context is that offenders who can't show that they're rehabilitated, they won't be released. Well, how do you know that your client will show he's been rehabilitated? You know, frankly, he already has. But the point is, under Colorado law, he isn't, has no entitlement, no assurance. And when he was sentenced, and I think we can also go back to that moment, the intent of the court was that he die in prison. And no one has ever considered, no court has ever considered those factors that are unique to juveniles. And with the court's permission, I'd like to reserve a minute or so for... Thank you. May it please the court, Your Honors, my name is Ryan Crane. I represent the Warden and State of Colorado in this case. Your Honors, Graham required a meaningful opportunity to be provided to juvenile offenders. It required the states to figure out the means and mechanisms for compliance with its rule. Colorado heeded that rule by creating an entire program, the J-CAP program, which allows juvenile offenders, after 20 years, making sure they've earned a high school diploma, to apply for this program. And then the program seeks to actually rehabilitate them. It's not just an early parole opportunity, it's actual rehabilitation. It seeks to then, it then requires a decision to be made by the parole board, requires review and forwarding to the governor, who must also make a decision. As the court has already noted, if a certain amount of years have also been served by the offender, 25 years in petitioner's case, he is presumed, under the statute, to have met the criteria for early parole. And at that point, not only does the statute require review of the application, it grants perpetual review. Every three years, if someone is for some reason denied entry into the program or denied early parole, they can reapply. In my mind, this is a model program that other states ought to follow. I haven't seen any state's baseline requirement of a meaningful opportunity for release. Do you know whether or not he has applied for the program, placement in the program? He's eligible to apply in about three months. If the court wants to consider, I know the court said it's limited to the record, there's public record, which is a report by the Department of Corrections to the legislature, as of January of this year, stating that at the time, there were 13 enrollees in this program progressing through the program. But what do we do with the fact that you're arguing there is a meaningful opportunity for early release based on maturity and responsibility, based in part on the J-CAB program, and as I understand it, our evidentiary record, unless we're going to go afield and start conducting our own factual investigation, we have no information whatsoever about whether or not anybody that was convicted of attempted first degree murder could ever overcome those factors A and E, the impact on the victim and the seriousness of the offense. And so what do we do with that? We have no evidence either way for us to find in your favor that there is a meaningful opportunity based on the possibility of entry into the program. I would say that the program as a whole, when you look at it, certainly meets what Graham requires. Graham doesn't say you can no longer consider what the offense was. I mean, that would be odd to say, don't even consider what happened. And it doesn't say you can't consider, and I forget what the other factor cited was, the A and E. The impact on the victim. Yes. Those are appropriate factors. Graham doesn't say, don't consider anything else. And every other state that I've seen, most of them just grant an early opportunity for parole. They say, after 25 years, we'll give these people an opportunity for parole. And they don't even say, here's these extra special factors that need to be considered. So Graham allows those things. Petitioner's burden would be to show that those things somehow always control and overtake every other decision that Graham would consider appropriate. And therefore, it's not a meaningful opportunity anymore. If Petitioner wants to do that, he's got to overcome that with some sort of evidence. And the program, as counsel has noted, is too early and at stages probably to allow that. If, when he goes to the program and he thinks he's being, you know, arbitrary and discriminatorily denied release under the program, he can file a committee procedure. Walking through this program, which takes three years to accomplish. Yes. Right? Yes. If at some point he fails to meet the standards of whatever it is here, the list is pretty long, any of these things, then I suppose he can file a habeas? Where are we here? He could file a 1983 suit, I think, arguing that he's being under color of state law, given the constitution being violated. If he contends he has demonstrated positive growth and change through increasing developmental maturity, and they say he has not, then he brings a 1983 action. This is, wow. And you would argue that an appraiser, he can't prosecute a 1983 action because it involves the duration of his sentence. And so you would probably argue at that point that he's confined to a habeas remedy, wouldn't you? I don't think so. Because there are 1983 suits that challenge denial of parole on the basis of improper factors being considered, despite what a statute might say is appropriate. In other words, he's challenging, at this point, the statute on its face. The statute is clearly sufficient on its face, in my mind, to satisfy Graham. Under de novo review. Yes. I haven't seen any- Meaningful opportunity. Yes. We can walk through all of these requirements and say, yeah, looks good to us. Absolutely. I've not seen a single- How do we do that? I've never seen a 2254 case that says, well, the statute looks good on its face, but who knows what's going to happen when the state actually applies it. I mean, if he wants to say the state's going to just violate its own statute and rules, and everyone's just going to be arbitrary, he's got to establish that. There's no reason to believe the state would enact a program like this. And then, I don't understand what his argument is. He's saying that the program, okay, it's sufficient on its face, but we have the burden to prove that it's going to be carried out. Virginia v. LeBlanc, for example, the United States Supreme Court, it's a 2254 case, but said the state Supreme Court was not unreasonably applying Graham there to say that that state's granting of geriatric release to all offenders at age 60 was sufficient to satisfy Graham. The Supreme Court there, that's Virginia v. LeBlanc. It's cited in the cases in the briefs. I apologize. But what the Supreme Court said there was, we're just looking at the program. And all Virginia's program does is say, it's not after 25 years of a sentence. It's at 60 years of age, so more like 40 years of a sentence being served for a juvenile offender. And the court didn't look for evidence of how it's being applied or how it's like to be applied. And how long had the juvenile defender been confined in LeBlanc? I don't know how long he had been defined, but the program, the geriatric release program would have allowed him or her to apply for geriatric release at age 60. So assuming a juvenile offender is sentenced around age 20, you're looking at about 40 years. And in Montgomery, the United States Supreme Court said that was a Miller case, so the question is, well, what do states have to do to comply with Miller? The court there said, states don't have to re-sentence anyone. If they want, they can do like Wyoming has said. And it stated the Wyoming statute and said, Wyoming has granted parole eligibility to juvenile offenders at 25 years of the sentence being served. That satisfies Miller because it's no longer a life sentence. So you don't have to re-sentence people under Miller to comply with Miller. Well, no, that's an automatic out. The Wyoming program, you're out, you're done. There's no program that you have to walk through. So I don't know if that's a real good parallel for what we have here. I believe the Wyoming statute provided for parole eligibility at 25 years. Our program does even better. It allows early parole, and it also provides actual programming and rehabilitation to prepare the person for release. And it requires review, and it allows perpetual review after that. You also take the position that this is not a non-homicide offense. Is that correct? Yes. Can you explain that? Yes. I mean, as discussed in the brief, what Graham said was, it used the phrase non-homicide offenses. And when it talked about homicide offenses, the language in the studies that it used suggests that the focus is the intent to kill. The studies cite that they include in their counting of juvenile offenders, they consider homicide offenders to be including those who were convicted of attempted murder. And so our argument is, this is actually a homicide offense to begin with, which would allow a life sentence. Well, but when you read the rest of Graham that follows the statement that you're quoting, it talks very much about drawing a line between the victim living or the victim dying. And here the victims did not die. That's true. So you're really hanging your argument on that one phrase included in that one sentence, intent to kill. That and some of the studies that Graham relies on. However, I would argue the court doesn't need to get there. Because even if it were to find that, our argument would still be, you know what, actually this isn't a life sentence anyway. Or even if this is a Miller case, Miller applies to barring life sentences unless certain factors are taken into account by the sentencer. And so we would say this is actually not a life sentence to begin with because the J-CAP program applies and petitioner is eligible to begin this program and then apply for early release after serving 20 years. Now you also take the position that the good time that vests would have an effect on the sentence. Yes. Every court that I'm aware of counts whether or not something is a life sentence and whether or not there's a meaningful opportunity by looking at parole as a meaningful opportunity for release. And that's including the opportunities that a prisoner has to deduct from the sentence over time for good time. But what you're doing is not saying right now he would be eligible for parole on his 60th birthday. What you're saying is right now he would be eligible at age 69. But if every single month he has good time and he gets 10 days out of every 30 days, by the time he turns 60, then he will in the future have accumulated enough good time credit to qualify for parole eligibility at age 60. Now I have not seen any cases that have addressed whether or not you can do that. There's some cases that seem to implicitly do that without any discussion. There's some cases that take good time credit up until the time that the petition is filed. But I haven't seen any cases that would support this idea that you could consider in considerable future time future good time credits. Why should we extend the law in that fashion? I'm not sure that would be an extension of the law. Well, what cases are there that have discussed that and have endorsed your position? I believe the cases cited in the answer brief state that the question is the opportunities that the prisoner will have to deduct from the sentence through good time and good behavior. None of those, I mean, all of those cases are looking at a sentence that has been imposed and then saying what are the opportunities that this person has? That's what the effective sentence is. Is there a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation? As the court has pointed out, Graham didn't require a guarantee of release. All it required was the states to provide some meaningful opportunity. In a year or two years, three years, ten years, the Colorado DOC may rescind the availability of good time credit. They may restrict it to five days every 30 days. So it seems to be a lot of ifs in the future to get to availability of parole eligibility at age 60. That seems to assume a lot of things in the future. I think we're assuming that things stay the way they are, which they haven't changed. And I don't know when the amount of good time has ever been taken away. Certain amounts of it vest and cannot be just taken away. I think it's more speculative for a petitioner to say, well, he might never get there or the law might change or that sort of thing. Our position is this is the law and this is the way it works. And this is the opportunity that he's been given by the state under the standard parole eligibility program. And so, yes, it's our position that the J-CAP program is sufficient, easily sufficient to satisfy Graham. In my mind, it's exactly what the Supreme Court wants to see states do is give these people a second chance at liberty. And this program does that not just by saying, well, we'll give you an early parole eligibility date. It says we're going to give you training and life skills training, vocational training, community support, family reunification, emotional and mental health training, and then give you a true second shot at liberty. It's not going to be guaranteed. It's not guaranteed. It's not going to be appropriate for every offender. And Graham recognizes that. We have juveniles in Colorado that are in this program now? Yes, there are currently 19. 19. None have ever been terminated from the program for failing to successfully progress. The first graduates will be eligible. And it's too fresh, too new, because it was effective 2016, August 2016. Yes. For anyone to have accomplished an opportunity to apply for the governor's clemency, basically. Correct. No one has. The first graduates will be around July of 2020. Of 20 what? 2020. And I can submit that report, if the court would like, as a supplementary authority of the public record. But I'm happy to provide anything. I thought it was referenced in a brief somewhere. Do you have any objection to that, counsel? Would you do that, then? Thank you. Absolutely. Thank you, your honors. Release under the J-CAP program is executive grace. And that doesn't satisfy a meaningful opportunity for release. Well, I just cannot understand your argument. Because you must concede that parole is never guaranteed. But you want a guarantee, but you say, no, I don't want a guarantee. Well, and I think this may go to the heart of the matter. And I also think it may go to the matter of why this should be decided in the first instance by the state courts who are so familiar with their laws. But it goes to the heart of the matter. Because guarantee, when the court is talking about no guarantee for release, it's talking about juveniles who aren't able to establish that they have been rehabilitated. Well, we don't know if your client is going to be able to establish that he's been rehabilitated at this point. And at this point, if he does, without any doubt, he has no expectation of release. You talk about a 1983 action, we'll lose that. And why will we lose that? Because under Colorado law, there's no right or expectation for release under either the J-CAP clemency program or under parole. Well, can you give me an example of any state parole system that guarantees you shall be paroled at X date? Thank you for that question. I'm on read, but I'd like to respond to it. Go ahead, please answer. The federal system. The federal system doesn't have parole. I know, but the federal system, if you earn the maximum amount of your good time through your behavior, you're released. 57 days a year. Yes. And in my briefs, I talk about how the parole system has changed over time in Colorado. There was a time when time served, less good time, equaled mandatory release. Well, if you served your sentence, that's a mandatory release. Now, pre-1985, if a man went into prison on a 10-year sentence and he earned the maximum amount of good time, he would be entitled to release in five years. If a man goes in today and he earns the maximum amount of good time, he doesn't get released in five years. He gets a chance of parole and no expectation or right to it. Do you see the difference? Yeah, and I did not understand that that is correct. That if somebody amasses, say they get a sentence for five years and they get two and a half years of good time somehow, you're saying that they still aren't going to be credited with serving their sentence. Correct. Not until they serve every day of the, in Mr. Rainer's case, 112 years. Well, that doesn't make any sense. I tried to explain it and I'm not sure. It's because parole means a different thing under different statutes. Some statutes, it is an absolute guarantee if your behavior is good. And Justice Kennedy in Montgomery talks about parole in most systems, but not Colorado, being the expectation when someone's behavior has established they're ready for release. And that's in Montgomery. He talks about that when he sees parole or the possibility of parole as a reasonable opportunity for release. You're assuming that you're going to have an arbitrary and capricious executive or an arbitrary and capricious parole board. And we have no way of knowing at this point that in five years what the situation will be. But he does have an opportunity. And respectfully, I'm not assuming arbitrariness or unreasonableness. You must be assuming that to say that, well, the governor just might not let them out. No, the governor within his total right and the parole board within their total right can say this was a very bad crime and the victims were really hurt. And you're going to say you can't do that. I'm saying that you can't deny someone, a juvenile. Even if it's a horrible, horrendous crime and even if the victim is a basket case, they can't take that into account is what you're saying. They can take it into account. But they can't do anything about it after they take it into account. When a juvenile offender has served a substantial sentence and can truly demonstrate the central intuition, that's what the Supreme Court talks about, of juveniles being able to be rehabilitated, yes, he should be released. Thank you. Thank you both for your arguments this morning. I thought the briefing from both sides was excellent. Thank you. Thank you.